ROBERT CHESEBRO ET AL

*vs.*

CHARLES D. CAPEN.

Lincoln.    Opinion July 24, 1928.

*George A. Cowan*, for plaintiffs.
*Locke, Perkins & Williamson*, for defendants.

Sitting: Wilson, C. J., Philbrook, Dunn, Barnes, Bassett, Pattangall, JJ.

Barnes, J. This is an action to recover possession of and quiet title to a fringe of land which plaintiffs insist constitutes the southerly end of certain farm lots in the second tier from the seashore, in the town of Boothbay.

Defendant claimed the land as the rear or northerly end of a lot in the first or shore tier of lots.

At the trial the question left for the jury was the location of this line, which, extending in a generally east and western direction, forms the dividing line between the lots of the first and second tiers.

Defendant, himself a surveyor, in 1887, bought the shore lots, his northerly bound, as given in the deed, running from a known point, on the westerly side and common to both tiers of lots; "thence east by marked trees etc.," a hundred rods or more to Hodgdon's Mill Pond.

He testified that soon after this purchase he went on the land with a surveyor of the vicinity and ran the line now in dispute, his north line, due east from a point now confessedly in the true line to the Mill Pond, and that at that time there were "marked trees" on this due east line, but where they stood, how many were there, or what has become of them and whether or not their stumps are now to be found in this line he did not say.

The plaintiffs assert that by limiting defendant to the land south of a line run from the known point common to both tiers of lots, "thence east by marked trees" to the Mill Pond, defendant has all that he purchased, that they bought in 1924, all north of the line established by the position of the marked trees; have claimed title to it ever since, and brought this writ to determine the ownership.

Plaintiffs and their witnesses testified to the fact that for a space after moving easterly from the known point the boundary evidenced by the marked trees runs in a broken line, meandering so far southerly that at one point it crosses lots staked out by defendant, in a development of his land for residence purposes, and wavering now north, now south of east until it reaches the Mill Pond at a point 110 feet south of the due east line.

Much testimony is reported upon the respective contentions of the parties, and in particular to the location of the "marked trees."

The instructions of the presiding justice were ample and clear.

He correctly stated the rule of the supremacy of monuments, when known or knowable, over courses and distances in construing deeds; directed the jury to decide whether, at the time of defendant's purchase, there were marked trees in the due east course, and if not to find and declare where were the marked trees called for in the deed.

There is nothing to indicate that the jury disregarded the law as given to them, or were swayed by prejudice or any wrong motive. The trial was conducted with the aid of two plans prepared from actual surveys and testified to by their authors.

From their study of the plans, as different witnesses directed their attention to them, the jury should have insight into the problem that the printed record does not furnish the court, and we cannot say the finding of the jury is wrong. They found the defendant's north boundary to be the broken, meandering line.

*Motion overruled.*